# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MICHAEL JARVIS,**

        **Plaintiff,**

**-vs-**                                             Case No. 6:11-cv-1590-Orl-22DAB

**CITY ELECTRIC SUPPLY COMPANY,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration following an evidentiary hearing and oral argument on the following motion filed herein:

> **MOTION:**   **MOTION TO ENFORCE SETTLEMENT AGREEMENT (Doc. No. 15)**
>
> **FILED:**     **January 9, 2012**
>
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part and **DENIED** in part.

This is a motion to enforce a settlement agreement which Defendant asserts it reached with Plaintiff in this action for unpaid overtime compensation under the Fair Labor Standards Act, 29 U.S.C. § 216(b) (herein "FLSA"). The parties have briefed the issue (Doc. Nos. 15, 17), and the Court held an evidentiary hearing. Upon review of the evidence, the arguments and the applicable law, and for the reasons set forth herein, it is **respectfully recommended** that the motion be **granted,** to the extent it seeks a finding that the parties have reached a settlement which concludes this case

and requires dismissal of the action, and **denied, without prejudice**, to the extent it seeks to "enforce" the confidentiality terms of the settlement reached or to reserve jurisdiction to do so.

**Findings of Fact**

According to the briefs, the evidence at hearing, and the other documents of record, the Court finds the following matters to be undisputed or proved by a preponderance of the evidence.

Plaintiff worked for Defendant as an hourly paid employee, from August 2006 through March 2011, and alleged that he was not appropriately compensated for overtime, as required under FLSA (Doc. No. 1). Following service of the Complaint, the parties, through their counsel, entered into settlement negotiations and memorialized same through a series of emails. (Defendant's Composite Exhibit 1-herein "Ex. 1"). It is apparent from the email exchange and from Plaintiff's testimony at hearing that Plaintiff authorized his counsel (Carlos Leach, Esq.) to act on his behalf, and Plaintiff actively participated throughout the negotiation process.

In November 2011, prior to the filing of an Answer or any responsive pleading, the parties reached a "settlement in principle" that "compensates Plaintiff in full, without compromise" (Doc. No. 17).

As reflected in the emails, defense counsel Shane Munoz, Esq., prepared a settlement agreement and stipulation for dismissal and transmitted same to Mr. Leach on November 18, 2011, noting that "your client has 21 days within which to review the agreement" but also noting Plaintiff's interest in expediting the settlement (Ex. 1). The settlement agreement included an extensive provision regarding confidentiality of the settlement and matters pertaining to the lawsuit, as well as matters "concerning the business of City Electric." (Ex. 1, paragraph 12 of the proposed agreement). The confidentiality provision is in the same type size and font as the rest of the settlement agreement.

On November 21, 2011, Mr. Leach wrote defense counsel regarding the agreement:

> Shane: This includes language that waives his pending worker's compensation claims. I thought you were adding a reservation of rights clause for those claims? Also, please add a neutral job reference in there somewhere. Thanks.

(Ex. 1). Defense counsel responded to Mr. Leach's email that same day, with a "revised draft settlement agreement," making the "changes we discussed" and asking counsel to have his client sign the agreement and authorize the addition of Leach's e-signature to the stipulation for dismissal (Ex. 1). Mr. Leach responded seven minutes later with the following:

> This looks good. I will prep and file a short notice to the Court advising that we have settled and will file pleadings for dismissal within 14 days.

(Ex. 1).

On December 1, 2011, defense counsel wrote to Mr. Leach, noting that he had not received the signed settlement agreement and asking for an update on the status. Mr. Leach responded on December 5 that: "I just spoke with him. He will try to send to me by tomorrow."

On December 7, 2011, Mr. Leach sent the following email to defense counsel:

> Shane,
>
> Mr. Jarvis is concerned that the agreement may affect his right to his current unemployment. Can we add another sentence:
> In addition, the agreement does not affect Jarvis' right(s) to his pending unemployment benefits.
> If you are ok with this, I can add it as "4(d)" and have him sign today most likely. Let me know asap. Thanks.

(Ex. 1).

Mr. Munoz agreed to the change, and asked Mr. Leach to send "a draft of the addition before finalizing." (Ex. 1). Mr. Leach promptly sent the revised agreement. *Id.* Mr. Munoz responded that the change was "AOK" assuming the addition was the only modification and Mr. Leach would agree to change "the agreement" to "this Agreement." *Id.* Mr. Leach responded: "Will do." *Id.*

As set forth in the papers filed by the parties, Plaintiff now refuses to execute the settlement agreement. Plaintiff represents that the settlement cannot be signed because it "contains an extensive confidentiality clause that he never agreed to sign." (Doc. No. 17 and testimony).

**Applicable Law**

Although this is an action brought under federal law, the determination as to whether a binding settlement agreement was reached by the parties in this matter is governed by Florida contract principles using a preponderance of the evidence standard. *Welch v. North American Tank Line, Inc.,* No. 8:06-CIV-23450-T-17-MAP, 2008 WL 3982394, *2-3 (M.D. Fla. Aug. 25. 2008) (internal citations omitted); *see also Schwartz v. Fla. Bd. of Regents*, 807 F.2d 901, 905 (11th Cir.1987) ("A settlement agreement is a contract and, as such, its construction and enforcement are governed by principles of Florida's general contract law."). As this district has recognized:

> Florida utilizes an "objective test" to determine whether a contract may be enforced. [*Welch*] at *2. A contract is formed when the parties express their mutual assent to the essential terms. *See State v. Family Bank of Hallandale*, 623 So.2d 474, 479 (Fla.1993) (stating that there must be a meeting of the minds as to all essential terms). "The definition of 'essential term' varies widely according to the nature and complexity of each transaction and is evaluated on a case-by-case basis." *H & R Block Eastern Enterprises Inc. v. Perkins*, 2007 WL 1020118 (N.D.Fla.2007). However, "even though all of the details are not definitely fixed, an agreement may be binding if the parties agree on the essential terms and seriously understand and intend the agreement to be binding on them." *Blackhawk Heating & Plumbing Co. Inc. v. Data Lease Fin. Corp.*, 302 So.2d 404, 408 (Fla.1974).

*Enriquez v. Williams,* No. 2:05-cv-238-FtM-36DNF, 2010 WL 3608463, *2 (M.D. Fla. Aug. 20, 2010).

**Discussion**

Defendant contends that the settlement agreement is fully enforceable in that there was a meeting of the minds between the parties. Plaintiff disagrees, contending that he never agreed to the confidentiality clause and such a provision is impermissible in the context of an FLSA case, on public policy reasons. Thus, the motion and response present two questions: 1) did the parties reach a settlement, and 2) should the confidentiality provision be "enforced"?

*Meeting of the Minds*

Applying the law to the undisputed facts, the Court finds that Plaintiff entered into a settlement with Defendant. "The creation of a contract requires that there be mutual assent to a certain and definite proposition." *ABC Liquors, Inc. v. Centimark Corp.*, 967 So.2d 1053, 1056 (Fla. 5th DCA 2007). Here, as noted above, Plaintiff accepted a settlement in principle that provided full compensation, without compromise. The emails indicate that Plaintiff, through his authorized representative,[1] accepted that the parties had reached agreement on all of the material terms and, in November, advised "we have settled."

As for the alleged lack of agreement on the confidentiality provision, Plaintiff's position is unpersuasive. The record indicates that Plaintiff was not a bystander to these negotiations, but was an active participant throughout. *See e.g.,* emails dated November 1, 2011 ("I spoke to Mr. Jarvis again"); November 7, 2011 ("Mr. Jarvis will accept full damages . . ."); November 18, 2011 ("In light of your client's [Plaintiff's] interest in expediting settlement . . ."). Assuming that the confidentiality provision was a material term of the agreement, it was not hidden in any way but was adequately set forth in the same type and font as the rest of the provisions of the written settlement agreement. There is no question that Plaintiff's counsel received and reviewed the settlement agreement which contained the provision, and, more importantly, *Plaintiff personally* received and reviewed it (*see* emails of December 5 and December 7, 2011). Both Plaintiff and Mr. Leach made comments and changes, suggesting a careful review of the agreement, but *not once* in this back and forth did Plaintiff or his counsel raise any objection to the fully disclosed confidentiality provision.

The record reflects that Plaintiff reviewed the agreement and accepted it, contingent on one final revision which was agreed to by Defendant. *See* email exchange of December 7, 2011. The

---

[1] Where, as here, the parties negotiated through counsel, Florida law provides that the party seeking to enforce a settlement agreement must demonstrate that the other party's counsel had "clear and unequivocal authority to enter into the settlement agreement." *Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1485 (11th Cir. 1994). Plaintiff does not claim that his counsel was not authorized to act on his behalf, and the papers and testimony reflect that Plaintiff held his counsel out as having such authority.

agreement did not leave open any essential term for future negotiation, nor was it merely an agreement to agree. Even if, as Plaintiff argued at hearing, there was no final settlement in November as the parties continued to add other terms, the Court finds by a preponderance of the evidence that the parties had agreed to all the terms set forth in the modified agreement, including the confidentiality provision, on December 7, 2011.[2] As such, Defendant has adequately carried its burden of establishing that the parties have settled this matter, on the terms set forth in the settlement agreement, as modified on December 7, 2011.

*Confidentiality and the FLSA*

Having established that the parties have settled the matter, the Court turns to Defendant's request to "enforce" the settlement – specifically, the confidentiality clause. Based on the facts presented, the Court cannot recommend granting this request.

As noted, this is an FLSA action and, as explained in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982), "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate" (internal citation omitted). If a settlement is not one supervised by the Department of Labor, the only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.* at 1353 (*citing Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S.Ct. 925, 928 n.8, 90 L.Ed. 1114).

The Eleventh Circuit has held that "[s]ettlements may be permissible in the context of a suit

---

[2]While finding that the parties agreed to these terms, the Court expresses no opinion as to whether or not this provision is enforceable, for the reasons set forth in the next section of this report.

brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." *Id*. at 1354. In adversarial cases:

> The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.*

As noted by Judge Merryday:

> In sum, an employer undertakes the private resolution of an FLSA dispute at his peril. If the employer pays the employee in full, including all wages owed and liquidated damages, the employee retains no uncompensated FLSA claim and the peril dissipates. However, if the employer extracts a compromise, the release of an FLSA claim approved by neither the Department of Labor nor the district court remains unenforceable.

*Dees v. Hydradry, Inc*., 706 F.Supp.2d 1227, 1237-1238 (M.D. Fla. 2010).

Plaintiff contends that confidentiality clauses such as the one included in the agreement here are impermissible in FLSA cases, and relies on a number of cases where courts have found such provisions to contravene public policy. This Court does not necessarily disagree with this general assertion, and, indeed, Plaintiff cites to several decisions by courts in this district where confidentiality clauses included in settlement agreements of *compromised* claims were not approved. *See Ashley v. 4 Your Child, Inc.*, NO. 6:11-CV-1303-ORL-22; 2011 WL 6153196 (M.D. Fla. Dec. 9, 2011) (report and recommendation – noting that the settlement agreement contains a confidentiality provision that is, at least in part, unenforceable due to the public filing of the agreement); *Kennedy v. Imagine Schools, Inc*., NO. 6:11-CV-489-ORL-22; 2011 WL 6076542 (M.D. Fla. Nov. 18, 2011) (same); *Connor v. Educational Services of America, Inc.*, NO. 3:1O-CV-471-J-32JRK, 2011 WL 6934147, *1 (M.D. Fla. Dec 27, 2011) (confidentiality provision removed, compromise approved);

-7-

*Perry v. Mil Homes, Inc.*, NO. 8:08-CV-491-T-33AEP, 2010 WL 2136502 (M.D. Fla. May 26, 2010) (District Judge declining to adopt report and recommendation to the extent it recommended approval of a confidential settlement).

Unlike the cases cited by Plaintiff, however, this Court is not being asked to "approve" a compromise via a fairness review. In fact, Defendant has taken the position that, as the settlement agreement provides for full compensation, there is no compromise and the agreement is not subject to the review requirements of *Lynn's Foods.* See Doc. No. 14 at note 3. This is a critical difference. The Court observes that, if a plaintiff's recovery is not eroded by any attorney's fees or costs, such settlements are routinely approved in this division – assuming approval is sought – because full compensation is "fair and reasonable" on its face. *See, e.g., Hanks v. Racetrac Petroleum, Inc.*, Case No.: 6:11–cv–1368–Orl–28DAB, 2011 WL 4408242 (M.D. Fla. 2011) (As the parties agree that Plaintiff has obtained full relief under this agreement, there is no "compromise" to review); *see also Biscaino v. Ars Acquisition Holdings, LLC*, Case No.: 6:11–cv–894–Orl–28DAB, 2011 WL 4424394 (M.D. Fla. 2011) (Full recompense is per se fair and reasonable). As neither party is seeking a finding that the settlement agreement is fair pursuant to *Lynn's Food,* the issue of the appropriateness or enforceability of the confidentiality clause is not properly before the Court.[3]

The Court is aware of the view expressed by some judges in the district that a non-cash concession by an employee, such as confidentiality provisions or a broad release clause, "affects both the 'fairness' and the 'full compensation' component of the settlement," and thus requires (and often precludes) a fairness finding, even when all monetary compensation owed is paid in full. *See Moreno v. Regions Bank,* 729 F. Supp. 2d 1346, 1348 (M.D. Fla. 2010). As Judge Merryday stated in *Dees*:

---

[3]As a practical matter, the Court observes that the exhibits, which are part of the public record, contain the provisions of the settlement agreement such that confidentiality is likely moot.

> For example, the employer in an FLSA case might offer full monetary compensation to the employee for the FLSA claim but might require the employee to refrain from informing fellow employees about the result the employee obtained. Or the employer might require the employee to trim the shrubbery at the employer's home each weekend for a year. In either instance, the employee outwardly receives full monetary compensation for his unpaid wages, but effectively the additional term (the "side deal") confers a partially offsetting benefit on the employer. To the extent that the employee receives a full wage but relinquishes something else of value, the agreement (even if exhibited to the court as a stipulation for "full compensation" or an offer of judgment) involves a "compromise," and Lynn's Food requires judicial approval of the compromise.

*Dees v. Hydradry, Inc.*, 706 F.Supp.2d at 1240. Respectfully, this Court disagrees with this position, to the extent it holds that intangible non-cash concessions, agreed to by the parties, erode the full compensation guaranteed by the statute sufficient to require court approval of all of the terms of an agreement to pay in full.

In the first place, the Court does not find the two examples noted above (trimming the shrubs and abstaining from informing others about the settlement) to be of the same character. Trimming the bushes is an act of labor – for which the FLSA clearly requires payment of monetary compensation. Refraining from discussing the settlement is not an act for which an employee is entitled to be paid under the Act. As such, it has no inherent cash value sufficient to erode the value of the full wages paid. While the Court agrees that a concession such as a release or a confidentiality clause may have value *to the employer*, the Court is not concerned with whether the employer is obtaining something of value, but focuses on what the *employee* is receiving. The FLSA is not an Act that purports to regulate the non-work related activity of employees. If the employer pays the entire compensation guaranteed by the Act and the parties agree that the employee will, say, not wear a hat on Tuesday, it is simply not the task of the Court to pass judgment on whether that particular agreed to condition is "fair."

Moreover, to the Court's mind, a finding that such additional non-cash concessions destroy the notion of full compensation disregards the fact that the employee *agreed* to the non-cash term.

Generally speaking, a plaintiff has a full right to prosecute his claim to completion, by jury verdict or otherwise. If a plaintiff, advised and counseled by his attorney, chooses to forego his absolute right to continue the litigation and accept a non-cash condition in addition to all wages and damages due, it necessarily follows that the plaintiff has determined that the concession is of little or no value to him. As long as a plaintiff is receiving all that the statute provides, what interest is being safeguarded by overriding the express wishes of the plaintiff in the matter and finding that the full compensation offered is, in fact, not enough?

Finally, the Court finds the position set forth by Judge Merryday, taken to its logical conclusion, leads to a finding that the Court must perform a full fairness review on all terms of all settlements, and the Court should never approve anything but full payment of all wages, full payment of liquidated damages, plus full payment of all attorney's fees and costs, without any conditions whatsoever. This is not the standard set forth in *Lynn's Food,* which permits approval of a compromise resolving a bona fide dispute over FLSA provisions. 679 F.2d 1350.

This Court finds that an agreement to pay full compensation, without compromise, exempts the agreement from the requirement that the Court review and approve all other terms the parties may have agreed to, and a court need not reach whether the non-cash concessions are, indeed, fair. Thus, once the parties have agreed that Plaintiff will receive every penny he is entitled to under FLSA and that compensation will not be diluted by attorneys fees or costs or other such provisions, the Court's review responsibilities under *Lynn's Food* are done. As that is what has occurred here, the Court need not and **does not** recommend approval or enforcement[4] of the confidentiality provisions, but rather **respectfully recommends** that the motion be **granted, in part,** to the extent the motion seeks a finding that the parties have settled, and the case be dismissed (with the Clerk directed to close the

---

[4]Indeed, no actual issue of "enforcement" of the confidentiality clause is presented here. Any future dispute as to the scope, effect and enforceability of the confidentiality clause, like the other parts of the parties' agreement, is for another day and another forum.

docket) upon certification by Defendant that the settlement amount has been paid. To the extent the motion seeks enforcement of the confidentiality provisions of the settlement or a reservation of jurisdiction to enforce the confidentiality provisions, the motion should be **denied.**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on March 5, 2012.

                                *David A. Baker*
                               DAVID A. BAKER
           UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy